## ESTHER BANKS v. KANSAS CITY RAILWAYS COMPANY, Appellant.

Division One, December 20, 1919.

1. **NEGLIGENCE: Petition: Interpreted by Instruction: Carrier and Passenger: Degree of Care.** Where the petition is susceptible of being interpreted as undertaking to state a cause of action by a passenger against a carrier, and plaintiff's instruction so interprets it, it will be so considered in adjudging any alleged errors committed. Where the relation of passenger and carrier exists, the carrier's duty is to exercise the highest degree of care. Where no such relation exists, ordinary care is required.

2. ————: **Passenger and Carrier: At Crossing: Misleading Instruction.** An instruction which is applicable to ordinary crossing cases and

which states no facts establishing a relationship of carrier and passenger, but which nevertheless fixes the degree of the carrier's duty at such crossing as "the highest practicable degree of care," is erroneous; and if in its main part it states the carrier's duty at a crossing, and then states the relationship of passenger and carrier in such a way that the jury is authorized to return a verdict for plaintiff, although they might find she was not a passenger, it is misleading.

3. ————: Passenger and Carrier: How Relationship Is Established at Crossing. The intent of the person desiring to become a passenger on a street railway car, is not sufficient to create the relationship of carrier and passenger. It can only be created by contract, express or implied, and there must be some act of the company indicating an acceptance of the person as a passenger. So that where defendant maintained two stations for its elevated railway, one on the north side of the rails, on which west-bound cars were run, and one on the south side of the rails, on which east-bound cars were operated, and between the two station-platforms planks were laid over which the public had long customarily and continuously crossed from one station to the other, and plaintiff went to the north station, with the intention of taking an east-bound car, went up the stairway, and seeing an east-bound car approaching, attempted quickly to cross over to the south station for the purpose of boarding it, and was struck by a west-bound car on the track next to the north station, the relation of passenger and carrier did not exist, for there was no contract, express or implied, for passage on the car which struck her, no offer to become a passenger on that car. and no act indicating an acceptance of her as a passenger on said car, and she had not reached the south station and was therefore in no position to be accepted as a passenger on the east-bound car.

Appeal from Jackson Circuit Court.—*Hon. Daniel E. Bird*, Judge.

Reversed and remanded.

*R. J. Higgins* and *Chas. N. Sadler* for appellant.

(1) The court erred in giving instruction number 1 asked by plaintiff. It is erroneous in that it requires the motorman to use the "highest practicable degree of care" both to discover plaintiff, and to stop the car. It attempts to submit the case to the jury on the "last chance" or humanitarian theory only, and in such cases

"ordinary care" is the only care required. Thompson
on Negligence, 449; Matz v. Railroad, 217 Mo. 299; Ni-
vert v. Railroad, 232 Mo. 637; Hall v. Railroad, 219 Mo.
591; Semple v. Railroad, 152 Mo. App. 25; Harlan v.
Railroad, 65 Mo. 25-26; Jones v. Railroad, 46 So. 61-64,
121 La. 39. (2) Plaintiff was not a passenger and
therefore not entitled to the "highest degree of care"
in any event. Stager v. Railroad, 119 Pa. St. 70;
Schepers v. Union Depot Co., 126 Mo. 72; Schoefer v.
St. L. & Sub. Ry. Co., 128 Mo, 64; 1 Nellis on Street
Railways (2 Ed.), secs. 249, 258; Southern Ry. Co. v.
Smith, 86 Fed. 292.

*Ed. E. Yates, Claude T. Gobel* and *Jos. S. Brooks*
for respondent.

(1) The petition stated a cause of action. Clark
v. Railroad, 242 Mo. 593; Haley v. Railroad, 197 Mo. 23;
Wacher v. Transit Co., 108 Mo. App. 665; White v. Rail-
road, 202 Mo. 560. (2) The demurrer to the evidence
at the close of the case was properly overruled. The de-
fendant in demurring to the evidence admitted as true
every fact which the testimony of the plaintiff tended
to prove and every inference which could be reasonably
drawn therefrom. Hach v. Railroad Co., 208 Mo. 601;
Kinlen v. Railroad, 216 Mo. 155. (3) Plaintiff's in-
struction was not erroneous. It follows the allegations
of the petition, and was based on the petition and evi-
dence in the case. The instruction is neither involved
nor misleading. (a) Under the pleadings and evidence
in the case it was not error to instruct the jury that
defendant was required to exercise "the highest degree
of care." The plaintiff was a passenger. She had en-
tered the defendant's station. Passengers were accus-
tomed to cross between the stations, and had been for
more than five years without objection and with the
consent and at the invitation of defendant. She was
such within the meaning of the law and it was the duty
of the carrier to exercise the highest degree of care for

her safety. The petition describes her as a passenger and the instruction submits the question to the jury. Wood v. Railroad, 181 Mo. 433; Reardon v. Railroad, 215 Mo. 132; Fillinghaar v. Railroad, 102 Mo. App. 581; Albin v. Railroad Co., 103 Mo. App. 316; Cobb v. Railroad, 149 Mo. 150; Phillips v. Southern Ry. Co., 124 N. C. 123, 45 L. R. A. 163; Waller v. Railroad, 59 Mo. App. 4-29; Grimes v. Penn. Co., 36 Fed. 72; 1 Fetter on Carriers, sec. 228; Young v. Railroad Co., 41 L. R. A. 193; Jordan v. Railroad Co., 165 Mass. 346; Dodge v. Boston & B. S. S. Co., 148 Mass. 207; Warren v. Fitchberg R. Co., 8 Allen, 227; Allendar v. Railroad Co., 37 Iowa, 264, 270; Lakeshore Co. v. Foster, 104 Ind. 293; Moore v. Des Moines R. Co., 69 Iowa, 491; 2 Wood on Railways (Ed. 1894), sec. 310; New York Central R. Co. v. Lockwood, 84 U. S. 357; Hutchinson on Carriers (2 Ed.), 521a; Phila. R. Co. v. Derby, 55 U. S. 14; The New World v. King, 57 U. S. (16 How.) 469; San Antonio R. Co. v. Murrey, 33 Tex. Civ. App. 626; M. K. & T. Railroad v. Harrison, 120 S. W. (Tex.) 254; Bracket v. Railroad, 70 S. E. 1026.

GRAVES, J.—Action for personal injuries. Judgment for plaintiff in the sum of $8,000, and defendant has appealed. The negligence charged in the petition is thus stated:

"Comes now plaintiff, leave of court having first been obtained, and files this her first amended petition herein, and for her cause of action against defendant states that defendant, The Kansas City Railways Company, is and was at all the times herein mentioned a corporation duly organized and existing according to law, and as such owned, operated, managed, or controlled a certain system of street railways and elevated railway in Kansas City, Jackson County, Missouri, and more particularly a certain line running over and upon its elevated structure over West 9th Street, and more particularly over West 9th Street where the same intersects with Mulberry Street, and in connection there-

with owned, operated, managed or controlled elevated stations at said Mulberry Street; one on the south and one on the north of said tracks.

"That said stations and platforms in front of them running up to or near said tracks and over the north track they operated west-bound cars and over the south track they operated east-bound cars; that said stations were used in connection with said tracks at said point for the accommodation of defendant's passengers; that during all the times herein mentioned there were planks between the rails of said tracks and the platforms of said stations running about the length of said station platforms, and that defendant was at all the time herein mentioned a common carrier of passengers for hire; that the spaces over the tracks and between said platforms at said point were, at all the times herein mentioned and for several years prior thereto, continuously used as a crossing for the public, and that it was and had been the custom of the public to continuously use said point as a crossing at all the times herein mentioned and for several years prior thereto with defendant's acquiescence and without its objection, and defendant's servants and agents in charge of the car in question could reasonably have expected to find persons on said tracks at that place on account of the frequent and continuous use thereof by footmen.

"That on or about the 7th day of March, 1916, plaintiff went up the steps of one of said stations for the purpose of transportation over one of defendant's cars running over and upon said elevated structure at said point, intending to pay the conductor in charge of said car the usual and customary fare exacted by defendants for transportation thereon; and that while she was crossing over said planks and rails from one station to the other at said point and while a passenger of defendant's, its agents, servants, or employees in charge of one of defendant's west-bound cars being operated over said elevated structure, negligently caused, suffered or permitted said car to run into and against plaintiff,

knocking her to the rails of the track, or the boards between said tracks, and injuring her; when they knew or by the exercise of the highest degree of care could have known that plaintiff was upon, close to, approaching, or dangerously near said west-bound track and in a position of peril, in time, by the exercise of the highest degree of care, to have stopped said car; or slackened the speed thereof; or to have warned plaintiff of the approach thereof and avoided running into and against plaintiff and injuring her, but negligently failed so to do.''

By her prayer plaintiff asked damages in the sum of $25,000, and by the concurrence of nine jurors she got a verdict for $8,000, upon which the judgment, supra, was entered. The answer was a general denial.

The assignments of error here are some eight in number, and cover all the questions we desire to discuss in the disposition of the case.

For the plaintiff the court gave but two instructions (1) a general instruction, intended to cover the case pleaded, and (2) an instruction on the measure of damages. The general instruction reads:

''The court instructs the jury that if you find and believe from the evidence that on the 7th day of March, 1916, the defendant owned the car, elevated structure, depots and tracks between said depots in question, and were engaged in the carriage of passengers for hire and that said depots were maintained for the use of passengers, in Kansas City, Jackson County, Missouri, and if you further find that defendant's servants were in charge of the car in question, and if you further find and believe from the evidence that on said date and for several years prior thereto at the place where plaintiff claims to have been struck many people were at that time and for several years prior thereto been accustomed to use said tracks and space between said depots as a crossing to and from one of said depots to the other, and that said tracks and space between said depots had been used in this way continuously and

habitually for many years with the defendant's acquiescence and without its objection, and that defendant's servants and agents in charge of the car in question could reasonably have expected to find persons on or dangerously near said tracks at the place in question on account of the frequent, continuous and habitual use thereof by footmen, and if you further find from the evidence that on said date the car in question was being run in a westerly direction and approaching said stations, then it was the duty of defendant's motorman operating said car, if he was, to exercise the highest practicable degree of care that would be exercised by careful, experienced and prudent car motormen under the same or similar circumstances to keep a vigilant watchout ahead for persons on said track or approaching dangerously near said track, and if a person or persons were seen or by the exercise of such high degree of care could have been seen by him to be in danger of being struck by said car, to use all reasonable care, consistent with the safety of himself, the car mentioned in the evidence and its passengers, to avoid colliding with them. If, therefore, you find and believe from the evidence that plaintiff was on said date approaching dangerously near said track upon which said car was running and in a position of peril and in danger of being run into by said car, and crossing from the north to the south depot of the depots in question for the purpose and intention of taking passage on one of defendant's cars at said south depot, and that the motorman operating said car, if he was, saw or by the exercise of such high degree of care could have seen plaintiff approaching dangerously near said track in such position of peril, if any, in reasonable time by the exercise of such high degree of care to have stopped said car and have avoided running said car into or against plaintiff (if you find she was run into or against by said car), but that he negligently failed so to do, and if you further find and believe from the evidence that on account of such negligence of said motorman, if any, plaintiff was run into

and against by said car at said time and injured, then your verdict should be for the plaintiff even though you may find and believe from the evidence that plaintiff negligently placed herself in a dangerous situation, if such situation was one of danger.''

The petition pleads that there were two stations at the point where West Ninth Street crosses Mulberry Street. The evidence shows the same.

Defendant had and maintained an over-head double-track railway at this point. On the north side of the double-track railway was a depot and its platform, and on the south side of these tracks was a similar depot and its platform. These depots were and are opposite each other. Between the two depots and their platforms are planks between all of the four rails of said tracks, so that persons could walk across from one depot to the other. However, the defendant maintained two separate stairways to these depots. One stairway was on the south side of Ninth Street and went up to the depot on that side. The other was on the north side of Ninth Street, and went up to the depot on that side. So that it appears that persons desiring to board a car at the south depot could go up to that depot, and would not have to cross the tracks above the street, nor the street below, if such persons chanced to be on the south side of the street. So also as to persons desiring to take a car from the north depot. Persons desiring to go east would have to take a car at the south depot, and persons desiring to go west would have to take a car at the north depot. In other words, west-bound cars ran upon the north tracks, and east-bound cars ran upon the south tracks.

Plaintiff worked three blocks north of this elevated structure, and desiring to go home about five o'clock in the afternoon, went up the north stairway to the north depot. She desired to go east, and attempted to cross over from the north depot to the south depot to take an east-bound car. She says that after she got to this north station she looked east and saw an approaching west-

bound car, about 150 feet away, running 9 or 10 miles an hour; that she then looked west, and saw an east-bound car (which she desired to take) a block or so away. She kept walking toward the south station, without further observation, until she was struck by the west-bound car, from which collision she suffered the injuries complained of in her petition. She also says, as an excuse for not crossing the street below, and going up to the south depot that it was crowded with automobiles and other vehicles. She, however, had been in the habit of crossing above the street, and others for a long time had continuously done the same thing.

In other words, there was evidence of a user of this crossing between the two depots and their platforms. Also that the boards between the rails extended along the same distances as the platforms of the depot. Other details will be left to the opinion.

I. To my mind the petition in this case undertakes to state a cause of action by a passenger against a carrier. If you take from said petition this language, "that the space over the tracks and between said platform at said point, was at all the times herein mentioned and for several years prior thereto, continuously used as a crossing by the public and that it was and had been the custom of the public to continuously use said point as a crossing at all the times herein mentioned and for several years prior thereto with defendant's acquiescence and without its objection and defendant's servants and agents in charge of the car in question could reasonably have expected to find persons on said tracks at that place on account of the frequent and continuous use thereof by footmen," that which is left clearly attempts to state such an action. In what is left we have (1) an allegation that the defendant is a carrier for hire, (2) that it maintained depots, (3) that plaintiff was going to the south depot with the intent of becoming a passenger, and intended

*Cause Pleaded.*

to pay the usual fare, and (4) that by reasons thereof the defendant owed to her the highest degree of care.

The clause which we have elited from the petition, supra, is misleading, but we think it was put in as explanatory of her actual position at the time she claimed to be a passenger. In other words, that she, a passenger, was there, because the public used this particular place as a crossing. But we need not speculate as to the meaning of the petition, because, the plaintiff has placed her own construction thereon, by her Instruction No. 1. In this instruction the highest degree of care is made the measure of defendant's duty. Such degree of care is only demanded in cases of passengers and carriers. So that we conclude, (1) that by elision, or striking out surplusage, we have a petition based upon the relation of passenger and carrier, and (2) that plaintiff has so construed her petition. So that we shall judge the errors, if any, in the trial of this cause upon this theory. In this view we need not discuss the alleged defects of the petition as one undertaking to state a cause of action under the humanitarian rule, wherein the measure of defendant's duty is ordinary care, as distinguished from the high degree of care demanded of a carrier toward its passenger.

II. On the theory that the petition is one by a passenger against a carrier, instruction one for the plaintiff is very misleading. This instruction we have set out in full. It follows the vice of the petition. To see the trouble with this instruction, a division there-

**Instruction.** of should be made. In the first place take all of this instruction, down to the words "if therefore" at the beginning of the latter third thereof, and you have no allegation whatever of the relationship of carrier and passenger. In this first two-thirds of the instruction you have the things usually found in an instruction in the ordinary crossing cases, save and except that the measure of care is fixed as "the highest practicable degree of care." Under the facts recited in

this portion of the instruction (absent a statement of the alleged relationship of carrier and passenger, as here) the degree of care fixed is erroneous. The mere statement in this portion of the instruction that defendant was a carrier of passengers for hire, does not suffice. It is just such carriers that injure persons at crossings, but the highest degree of care is not the measure of their duty in such cases.

It is true that in the latter third of the instruction the relationship of passenger and carrier is covered, yet the jury might easily be misled in concluding that the plaintiff was entitled to the highest degree of care (on the facts stated in the first part of the instruction), although they thought she was not a passenger under the latter third of the instruction. No average jury can reconcile the conflicting portions of this instruction. It is misleading under the theory adopted by plaintiff as her theory of her petition. For this misleading instruction the judgment will at least have to be reversed and cause remanded.

III. Plaintiff, in our judgment, was not a passenger, and her suit in that capacity must fail. Throughout the petition she charges the maintenance of two stations near the point of injury. It also charges that to each of those separate stations was a platform which was in the space between the station and the track, or first rail of the track next to the particular station. The petition therefore clearly charges that there were two stations, with their respective platforms. Not only so, but in the course of the trial it was admitted that there were two stations, and proved that there were two stations. When plaintiff went to the north station she had no intent of taking a car from that station, because such cars ran west, and she desired to go east. At that station she gave no indication to the defendant's agents that she desired to assume the relationship of passenger and carrier, because she had no intention of boarding a car at

Carrrier and Passenger.

that point. What she did do, was to pass rapidly across the space between the two depot platforms. We should say that she attempted to pass rapidly across the space, because she was struck by a west-bound car, just as she left the platform and got into the north track. She was not a passenger as to this car, because she had no intention of taking it, and had in no way indicated her purpose to become a passenger thereon, or on any other car running upon the north tracks. She says her purpose was to cross over and take an east-bound car, but she had not reached either that station or its platform; nor had she in any way indicated to defendant's agents her purpose to board such a car.

The record in this case is perfectly blank as to any facts which tend to prove the relationship of passenger and carrier, save and except the evidence of the plaintiff as to her intent to become a passenger. She herself says there was not even an intent to become a passenger on the west-bound car. The only thing in the record is that she says that she was going across toward the south station house with the intent of becoming a passenger from that station. The evidence is silent as to whether the cars stopped regularly at these station houses (called by one witness shelter houses), or only stopped when there were passengers in sight, or upon signal. And whilst there is evidence that many people crossed over this space between the two depots, it is not made clear as to what portion of them were even intending passengers. Being pressed the plaintiff said: "Why, the general public used it." A newspaper vendor, who was a witness, spoke of his use of the space in plying his business. But this is not very material. It is clear that up to the injury the plaintiff had done nothing to indicate to the defendant or its agents her purpose of boarding a car at the south depot or station.

The law is well settled in this State, and by this court, and we need not go further for authorities. The act or intent of the person desiring to become a passenger is not sufficient to create the relation. There must

be some act of the company indicating an acceptance of the person as a passenger. The relationship of passenger and carrier can only be created by contract, either express or implied. [O'Donnell v. Railroad, 197 Mo. 1. c. 117.]

MACFARLANE, J., in the case of Schepers v. Union Depot Ry. Co., 126 Mo. l. c. 672, said:

"It must be conceded that there is difficulty in many cases in determining when the relationship of carrier and passenger begins, and what acts of the parties are sufficient to create it. The difficulty is greater in case the carrier operates a street railway, having no regular stations or station agents authorized to make contracts. In respect to such carriers passage must be taken hastily, on the streets, at points prescribed by the rules of the carrier or by the police regulations of the municipality. Yet, one test applies alike to all, and that is, the relation can only be created by contract between the parties, express or implied. There must always be an offer and request to be carried on one side, and an acceptance on the other. [2 Shearm. and Redf. on Negligence (4 Ed.), sec. 488; Patterson's Railway Accident Law, secs. 210, 214; 2 Am. & Eng. Ency. Law, p. 742.]

"A passenger has been defined to be 'a person whom a railway, in the performance of its duty as a common carrier, has contracted to carry from one place to another place for a valuable consideration, and whom the railway, in the course of the performance of that contract, has received at its station or in its car, or under its care.' [Patterson's Railway Accident Law, sec. 210.] In our State probably the words 'for a valuable consideration' do not govern. [Buck v. Railroad, 108 Mo. 179, and cases cited.] But the case at bar does not require us to go into that phase of the law.

"It is true that an acceptance must, in many cases, be implied. When a street car has stopped at a usual place for receiving passengers an acceptance of all persons who are waiting to take passage must be implied, as it may be impossible for each to be separately recog-

nized. So 'when a person intends to take passage on a street car and has hailed it for that purpose, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of carefully and prudently attempting to step upon the platform.' [Booth on Street Railway Law, sec. 326; Smith v. Railroad, 32 Minn. 2.]

"It is well said by Smith, P. J., of the Kansas City Court of Appeals, in speaking of the duty of a carrier by street railways: 'It is bound to see every passenger who attempts to get upon its cars while they are standing still, but they are not so bound after the car is in motion. The safety of the train and those who are already on board requires that the gripman should be on the lookout ahead, while the conductor should be occupied with collecting fares, receiving requests to stop, and the like, rather than looking out for the safety of those who may attempt to get on board after the train has started.' [Meriwether, v. Railroad, 45 Mo. App. 534.]

"The ordinances of the city and the rules of the defendant fixed the stopping places for receiving passengers at the far cross-walk of the streets. At these points those in charge of the cars are required to look out for persons desiring to take passage. If no one presents himself in time, and makes known a desire to take passage, the cars are not required to be stopped, and the employees in charge may give attention to their other duties. The cars would not have to be stopped for one desiring to take passage if he failed to make his wishes known in time to enable them to stop at the proper place.

"It follows from what has been said that plaintiff did not become a passenger by a mere attempt on his part to board the car while in motion as is declared by this instruction. There must have been some act on the part of the carrier indicating an acceptance. [Stager v. Railroad, 119 Pa. St. 70.]"

In Schaefer v. St. L. & Suburban Ry. Co., 128 Mo. l. c. 70, Scheper's case is approved. Both of these cases are street railway cases, and not steam railway cases. In Schaefer's case, supra, at page 70, it is said: .

"By instruction number 1 the plaintiff would have the court declare that if defendant got on the step of the car for the purpose of getting upon the platform as a passenger, with the intention of paying his fare when called upon, those acts made him a passenger, without regard to the fact as to how, when and where he got upon the step of defendant's car. This instruction wholly ignores the fact as to whether or not defendant ever agreed to accept plaintiff as a passenger, or did any act indicating an intention to accept him as such. Without a contract for carriage on one part shown, and an acceptance on part of the other, either expressed or implied, the relation of passenger and carrier can never exist.

"In the case of Schepers v. Railroad, 126 Mo. 665, the court by MACFARLANE, J., makes use of the following language, which we think decisive of the question raised on this instruction: 'It follows from what has been said that plaintiff did not become a passenger by a mere attempt on his part to board the car while in motion, as is declared by this instruction. There must have been some act on the part of the carrier indicating an acceptance.' The offer must be made to become a passenger on one part, and an acceptance, on the part of the company, of the passenger on the other, before the relation of carrier and passenger can be said to exist."

The evidence shows that each of these station houses had a platform, (witnesses differing as to width) from which passengers or intending passengers boarded the car. These platforms extended from the station house to the first rail of the tracks. One witness states that his place was at the west end of the platform to the north station to collect the fares of passengers boarding

16—280 Mo.

west-bound cars, and that there were no passengers on his platform at the time of plaintiff's injury.

The point we make is, that no act of this woman had placed her in position to be accepted as a passenger. She had no intention of taking the west-bound car, and had left that station, and its platform. She had not reached the south station or its platform, and was in no position to be accepted as a passenger from that station or its platform. We concede the rule that when one is in the station or upon the platform, intending to take passage, and the street car comes up and stops at that station or its platform, then it may be said that there has been an acceptance of the passenger, and an implied contract of carriage, thus creating the relationship of passenger and carrier. But the plaintiffs' evidence does not bring her within his rule. The rulings in both Schepers and Schaefer cases, supra, are approved in Barth v. Railway Co., 142 Mo. l. c. 551. The Barth accident from the record facts must have occurred at the same place as the present accident.

The Schepers and Schaefer cases, supra, are also cited with approval, in the following: Reynolds v. Transit Co., 189 Mo. l. c. 418; Devoy v. Transit Co., 192 Mo. l. c. 210; Nolan v. Railroad, 250 Mo. l. c. 617.

From all these cases may be deduced the principle, that it requires some act of the carrier to create the contract of carriage. If by stopping its cars the carrier induces one to accept its invitation, the person so accepting is a passenger. Hence, we have the cases where a person is injured in attempting to board a car, which has stopped, but starts before the intending passenger gets fully aboard. On the other hand, if the person indicates his purpose of taking passage upon a car, by being on a platform of a regular stopping place, or by signaling the operator of a car, and the operator by any act indicates his acceptance of the proposed passenger, the contract of carriage is complete, and the person thereupon becomes a passenger. But the vital question is that there must be something done by

the carrier to indicate its acceptance of the person as a passenger. A person may signal a car to stop for him, but if the car does not stop, such person is not a passenger. So, too a car may stop, and a person may fully intend to board it, yet if he waits until the car starts, and the avenues of entrance closed, before he accepts the invitation of the carrier, he is not a passenger. In such case the invitation has been withdrawn by the act of the carrier. But we emphasize that there must be something done by the carrier, before you can have a contract of carriage, either express or implied. The intent of the person alone does not make the contract. Nor do the acts of the person alone make a contract. There must be something done by the carrier as well as the intending passenger. In this case there is no evidence tending to show that plaintiff had been accepted as a passenger by the defendant.

Its depots upon either side of its tracks were its stopping places, but with a street railway company it takes more than the mere maintenance of a stopping place. At the very least the person must be at the stopping place before it can be urged that the relationship of carrier and passenger could begin. The situation in this case is not materially different from a stopping place at the intersection of two streets. In case the carrier has a double track at the intersection of two streets, the persons desiring to take east-bound cars might be required to get on at the southwest corner of the intersection, and those going west at the northeast corner of the intersection. Or the two stopping places might be opposite each other, as here, but in any event, the railway tracks would be between the two stopping places. But this is only by way of illustration. The point is (in the instant case) that the plaintiff had never reached the stopping place from which she intended to board the car. Until she did, she had not by act offered herself as a passenger, and of course had not been accepted as such. The relationship of passenger and carrier did not exist at the time of the acci-

dent. So that the evidence totally fails to sustain the petition of the plaintiff. The demurrer thereto should have been sustained. [Garrett v. Transit Co., 219 Mo. l. c. 95-96.]

Whether she can amend her petition and state a different relationship, we need not discuss. The present judgment must be reversed. As to whether a remanding of the cause will avail plaintiff, we do not care to forecast an opinion. We will, however, remand the cause.

Let the judgment be reversed and the cause remanded. All concur.