BLANCHE IRWIN v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—30 S. W. (2d) 56.

Division One, July 9, 1930.

*E. T. Miller* and *Ward & Reeves* for appellant.

*C. M. Edwards* and *Phillips & Fulbright* for respondent.

GANTT, J.—A Ford sedan and branch-line train of defendant, running backwards from Malden to Clarkton, collided at a public crossing in Clarkton at 5:45 P. M. on January 25, 1926. The sedan was driven and controlled by Owen James, who was nineteen years of age and an employee of an automobile sales-agency in Clarkton. Plaintiff, age twenty-one, and Cinda Cox, age nineteen, were riding on the front seat as guests of Owen. Owen was on the left at the wheel, plaintiff on the right at an open window, and Cinda in the middle. It was "dusky dark," but objects and persons could be seen. Owen and Cinda were killed. Plaintiff was injured and seeks damages. She charged negligence as follows: (a) Violation of speed ordinance; (b) Violation of humanitarian rule; (c) Failure to give statutory signals. The answer was a general denial, charge of contributory negligence and violation of an ordinance providing that

motor vehicles stop on approaching the Frisco crossing before proceeding to cross the track. The reply was considered a general denial. Judgment for $10,000 and defendant appealed.

At the trial defendant admitted its cars exceeded the speed limit but contended the ordinance was unreasonable and void. The contention was overruled. Error is not assigned on the ruling, but error is assigned on the refusal of an instruction directing the jury that the ordinance limiting the speed of trains to five miles per hour was unreasonable and void. Defendant cites no authority. Similar ordinances have been uniformly sustained by this court. [Murrell v. Railroad Co., 213 S. W. 964, l. c. 966.]

However, defendant contends that plaintiff was guilty of contributory negligence as a matter of law in that she did not, as the sedan approached the crossing, look and listen for approaching cars.

Defendant's main track runs a little north of east and a little south of west through Clarkton and crosses Highway No. 25 within the city limits. The branch line runs from Clarkton to Malden, a distance of seven miles, and the train consisted of an engine, baggage car and coach. No way was provided at Malden to turn the engine. So the train, for many years, daily backed from Malden to Clarkton, arriving at about 5:45 P. M. Citizens of Clarkton, including occupants of the sedan, knew of this and knew about the time of arrival. Plaintiff testified she did not know its schedule time, but knew it arrived between five and six P. M. When the train reaches a point about six hundred feet west of the public crossing, it is switched to the main line and proceeds in an easterly direction over the highway crossing and to the depot three hundred feet east.

On the day of the collision the rear of the train was equipped with an air whistle and electric light of customary size. There was evidence tending to show the electric light was shining; that the air whistle was sounded by the conductor, who was on the platform of the rear car; that the engine bell was ringing and that two long and two short blasts of the engine whistle were sounded three times intermittently, all during the time the train was moving six hundred feet from the switch to the crossing.

The highway runs north and south, is the main street of the town and sixty-five feet wide, with gravel nineteen feet wide in the center. Buildings on the west side thereof extend to within twenty-one feet of the north rail of the track, and the view, toward the west, of travelers on the highway from the north is thereby obstructed.

The sedan was driven on the highway from the north at twelve to fifteen miles per hour and immediately behind another automobile, until said automobile turned to the right and stopped about thirty-three feet from the north rail. Owen in passing said automobile

momentarily stopped, turned a little to the left and proceeded on the gravel at the same speed to the crossing.

Plaintiff did not drive a car and did not know the speed they were traveling. She had many times ridden over the crossing in cars of others, was familiar with the crossing, knew of the stop and warning signs and saw the stop sign when the sedan was near the crossing. She did not notice the driver as the sedan approached the crossing and was and had been engaged in conversation with Cinda about "a date" they had with young men. She testified that although talking to Cinda she looked and listened for approaching cars; that she did not hear the signals or noise of the train, but did see the light on the rear of the train and thought at the time it was light cast from the automobile they had just passed; that immediately after seeing the light she saw the train and at that time the front wheels of the sedan were on or near the north rail.

Many witnesses testified they heard the signals, and some of them testified they also heard the noise of the train. On the other hand, other witnesses testified to the contrary. Some of them were north of the track and on the highway, or near the highway before and at the time of the collision.

I. The facts considered, should we rule that plaintiff was not in the exercise of ordinary care? We do not think so. Neither the subject-matter of the conversation with Cinda, nor the failure of plaintiff to be at military attention as they approached the crossing, convicts her of negligence as a matter of law. The buildings on the west side of the high-way may have interfered with the sound of signals and noise of the train; the automobile in front of the sedan may have interfered with a view of the crossing and toward the west; in passing, attention may have been given to the other automobile, and it being "dusky dark" the top and wind-shield of the sedan may have made it difficult to discern objects. When plaintiff had passed the automobile, the front of the sedan was within about twenty-five feet, or one and one-fourth seconds, of the north rail, and at this time the rear of the coach, considering its speed, must have been within about twenty-one feet of the center of the highway where the collision occurred. Plaintiff then had a side view of the electric light on the coach, which she thought was light cast from the automobile they passed. Immediately thereafter she saw the coach, but the sedan was then on or so near the track that the question of her negligence in failing to warn the driver was for the jury.

II. Defendant also assigns error on the refusal of its instruction directing the jury that plaintiff could not recover under the humanitarian rule.

The engineer testified that he was looking to the rear and immediately applied the air when he saw the approaching sedan about fifteen feet from the track. The conductor, who was on the platform of the coach, testified that he saw the approaching sedan when it was about twenty-five feet from the track; that he immediately applied the air; that when the collision occurred the train continued to move east and skidded the sedan along the track.

There is evidence tending to show the sedan was pushed along the track in an upright position for about ninety-five feet, when it was caught on guardrails, pushed over by the train and crushed under the coach; that no glass of the sedan was broken until it was caught by the guardrails. As to this, plaintiff testified in substance as follows:

"The light was dim and when it struck I felt the impact of the train with the car. I felt that I was sliding along and I seemed to be floating. I grabbed hold of something and told Cinda to hang on, if she could, till it stopped, and she said something about her feet being hung. After that, I don't remember anything. But I felt the car crushing in just before Cinda said that. The car seemed to slide along and float around and I felt it crushing—it seemed to be crushing in on us. I grabbed hold of something and told Cinda to hang on; then when Cinda said something about her feet being hung, that is the last thing I remember. I was just dazed as we were sliding along that way, and when I felt this car crushing in I began to feel smothery and hurt. I don't think I was hurt before the car crushed in on us. It was about three days after that before I knew everything plain. I didn't know anything else that day. I couldn't tell you how far we had been sliding before the car was crushed in. I don't know what happened to the other occupants of the car when the car was crushing down. I don't know what I got hold of when I reached for something; I just grabbed something and told Cinda to hang on, if she could, till it stopped. She said her feet were caught or hung or something like that; she said she couldn't hang on. I don't remember anything after that except that crushing feeling; that is all I remember. . . ."

There was also evidence tending to show the train could, with safety to those aboard, have been stopped in about thirty feet. If so, injury to plaintiff after the collision might have been avoided. The court ruled correctly in submitting the issue to the jury.

Excerpts from the testimony of plaintiff given on the trial of another case (Cox v. Ry., 9 S. W. (2d) 96) growing out of the collision were admitted in evidence as tending to contradict the testimony of plaintiff in this case. The conflict was for consideration of the jury.

III. Defendant assigns error on refusal to permit the witness Beasley to give evidence as to the time necessary to effectively apply the air brakes. The witness testified that he had been in the railroad service thirty-five years, and during that time had been station agent, telegraph operator, train dispatcher, chief dispatcher, train master, assistant superintendent, and fireman for a short time. He further testified that he was familiar with the manner of working air brakes and how they are applied. The witness might know the manner of working air brakes and how they are applied and know nothing of the time necessary to effectively apply them. We think the court ruled correctly in holding that he was not qualified to give an opinion on the question. Moreover, there was an abundance of evidence on the question, and if error, it was not prejudicial.

IV. Error is assigned on Instruction 3 in that it did not require the jury to find that plaintiff's injury occurred after the train passed the point at which it could have been stopped.

By Number 3 the jury were instructed that if defendant's employees saw plaintiff in peril in time, by the exercise of ordinary care, to have avoided backing the train the distance described in evidence and injuring her and negligently failed to do so, to return a verdict for plaintiff.

From this we think the jury understood that plaintiff's right of recovery on this issue was limited to injuries received after the train had been backed the distance mentioned in evidence. So understanding, they must have found that defendant's employees could, by the exercise of ordinary care, have stopped the train before backing it said distance and thereby avoided injury to plaintiff. The error, if any, was not prejudicial. This disposes of a like complaint against numbered instructions 6 and 7.

V. Error is assigned on refusal of Instruction C in that the court thereby refused to direct the jury that if plaintiff received part of her injuries before the train could have been stopped, then she could not recover for such part of her injuries.

While there is evidence tending to show that the body of the sedan was damaged when it collided with the train, there is no evidence tending to show that plaintiff was injured prior to the time the sedan engaged the guardrails. Furthermore, the instruction ignored the issue of primary negligence. Instruction D was properly refused for the same reason.

VI.  Error is assigned on refusal of Instructions lettered J, K and O.  These instructions ignored the issue under the humanitarian rule.

VII.  Error is assigned on refusal of Instruction L which announces that a railroad crossing is a sign and warning of danger. The instruction states a mere abstract proposition of law and its refusal could not have been prejudicial.

VIII.  Error is assigned on refusal of Instruction M. This instruction directed the jury that the driver of the sedan was guilty of negligence as a matter of law, and further directed that if they found that his negligence caused the collision, and that the collision and injury to plaintiff were not caused or contributed to by any negligence of the employees in charge of the train, then the plaintiff could not recover.

As supporting this instruction, defendant cites Sorrell v. Payne, 247 S. W. (Mo. App.) 462.  In that case it was admitted that the driver did not look for the train, and a similar instruction was approved.  In this case no such admission was made.  The court ruled correctly.

IX.  Error is assigned on the amount of the verdict.  It will not be necessary to detail the evidence.  Plaintiff was taken from the wreckage to her home.  She was unconscious, and except for momentary consciousness so continued for several days.  She was bedfast for several weeks, continued to be hysterical, lost weight and spent many sleepless nights.  Physicians testified that she was suffering from traumatic neurosis, that her condition was serious and difficult to handle.  One of them testified that in his opinion this condition was permanent.

We do not think the evidence authorizes an interference with the judgment, which should be affirmed.  It is so ordered.  All concur.