BETTY LOU WILLIAMS, a Minor, by MARY E. MUNROE, Guardian, Appellant, v. ILLINOIS CENTRAL RAILROAD COMPANY, a Corporation, Respondent, No. 41429—229 S. W. (2d) 1.

Division One, April 10, 1950

502

Ninian M. Edwards, Jr., N. Murry Edwards, McHaney & Mc-Haney, Flake L. McHaney and Hal H. McHaney for appellant.

504

*Watts & Gentry* for respondent; *Vernon W. Foster, Charles A. Helsell* and *John W. Freels* of counsel.

LOZIER, C.—Plaintiff sued defendant for damages for personal injuries sustained in a train wreck in Louisiana, December 27, 1946. At the close of all the evidence (defendant offered none), defendant was denied a directed verdict requested by it on the ground the action was barred by the statutes of Louisiana. The verdict was for plaintiff for $12,500. Defendant's motion for new trial was overruled, its motion for judgment notwithstanding the verdict was sustained, judgment was entered in favor of defendant and plaintiff appealed.

On the evening of December 26, 1946, plaintiff purchased from defendant a round trip ticket from St. Louis, Mo., to New Orleans, La., and boarded the train. The next morning, 30 or 35 miles out of New Orleans, the moving train suddenly stopped and the car in which plaintiff was riding was derailed. Plaintiff was injured when thrown against the side of the car.

As plaintiff-appellant was 19 years old when she filed her suit (August 23, 1948, over a year after the derailment), statutes of limitation of actions and the nature of appellant's cause of action are involved. Defendant-respondent contends: That the cause was one *ex delicto* arising under the statutes of Louisiana (not a "common law state") which statutes extinguish not merely the right to sue, but the cause of action itself, unless suit is brought within one year, and that, therefore, the action was barred by Sec. 1021. (All references herein to Missouri statutes are to both R. S. 1939 and Mo.

R. S. A.) Appellant asserts: That her cause is one *ex contractu* and that the 5 year limitation provided for in Sec. 1014 is applicable; that even if the cause is one *ex delicto,* the Louisiana statutes do not extinguish the cause of action; and that the 1 year limitation imposed in that state (if applicable in Missouri at all) is subject to Sec. 1020, suspending the running of the statute during her infancy.

The first issue for determination, then, is the nature of appellant's cause. The carrier-passenger relationship is created by contract, express or implied. Graves v. Mo. Pac. R. Co., 342 Mo. 542, 118 S. W. 2d 787, and Thomas v. St. L.-S. F. Ry. Co. (Mo. App.), 293 S. W. 1051. It is not controverted "that a passenger injured through the negligence of a carrier may proceed either upon the contract alleging the careless or negligent acts of the defendant as a breach of the contract of transportation, or proceed in tort and make the carelessness and negligence of the carrier the ground of his right of recovery." 1 C. J. S. 1119; 10 Am. Jur. 346; Nagel v. Thompson, 237 Mo. App. 1061, 170 S. W. 2d 416; and Canaday v. United Rys. Co., 134 Mo. App. 282, 114 S. W. 88.

Generally, it is immaterial whether the cause is upon contract or in tort. However, the nature of the cause may become important for some reason, including whether the particular cause is barred. 1 C. J. S. 1099; 41 Am. Jur. 338; Matthys v. Donelson, 179 Iowa 1111, 160 N. W. 944; Sawyer v. El Paso & N. E. Ry. Co., 49 Tex. Civ. App. 106, 108 S. W. 718; Wells v. Oldsmobile Co., 147 Ore. 687, 35 Pac. 2d 232; Gottfried v. Gottfried, 56 N. Y. S. 2d 50, 269 App. Div. 413. And, in any suit brought by a party entitled to sue either in tort or upon contract, where it becomes necessary to determine the nature of the cause, that determination is based upon construction of the complaint. 1 C. J. S. 1100; White v. Scarritt, 341 Mo. 1004, 111 S. W. 2d 18; Nagel v. ▇ Thompson, supra; and Tamm v. Ford Motor Co. (C. C. A., Mo.), 80 Fed. 2d 723.

We thus come to the petition here. Its pertinent allegations were: That defendant was a common carrier for hire; that plaintiff purchased the ticket and "that the defendant thereby agreed and it became its duty as a common carrier to well and safely carry the plaintiff" to New Orleans and "return to St. Louis"; that "through the carelessness and negligence of the defendant and in violation of the aforesaid contract, the car and train in which the plaintiff was being carried was carelessly and negligently caused, suffered, and permitted to become derailed, turn over and come to a sudden stop, causing plaintiff to be thrown from her seat in said car, forward and against the seat in front of her, and causing her to sustain the injuries hereinafter set out"; that "she had no knowledge of the mechanism or operation of the car and train in which she was traveling, or the track, roadbed and appurtenances thereto upon which she was traveling; that the same was under the sole control,

supervision and ownership in charge of the defendant as aforesaid; that the plaintiff relied solely upon the defendant for the proper maintenance and operation of said train, tracks, rights of way, rolling stock and appurtenances thereto''; that ''by reason of and as a direct and proximate result of the neglect and carelessness of defendant as aforesaid, she received the following injuries'' (describing them).

Ordinarily, this petition, sounding both in tort and upon contract, would have been construed as stating a tort action. 1 C. J. S. 1121; White v. Scarritt, and Canaday v. United Rys. Co., supra. However, in its answer, defendant admitted the allegations of the petition quoted above and admitted that ''the train on which plaintiff was riding on the occasion referred to in plaintiff's petition was derailed and that plaintiff suffered some injury as a result thereof, but defendant denies that she was injured as set out in plaintiff's petition.'' Further answering, defendant alleged that the derailment occurred in Louisiana; that plaintiff's cause of action was one ''for damages resulting from offenses or quasi offenses'' and was, therefore, barred by Articles 3536 and 3537, Louisiana Civil Code, Revision of 1870, requiring her suit to have been filed within 1 year.

In her reply, plaintiff denied that her cause of action was barred by Louisiana law. She alleged that the action was ''governed by the laws and statutes of limitations of the State of Missouri, which allows plaintiff a period of five years after she becomes twenty-one years of age to file suit against the defendant for damages on account of injuries suffered by her on December 27, 1946.'' She reiterated these allegations of her petition: As to defendant being a common carrier of passengers for hire; as to her purchase of ''the ticket entitling her to ride as a passenger''; as to defendant's contracting to carry her as a passenger safely from St. Louis, Mo., to New Orleans, La., and return; as to boarding the train; as to defendant, ''in breach of its said contract and in violation thereof,'' negligently permitting the derailment. She concluded her reply with this allegation: ''That therefore plaintiff's suit herein is based on a Missouri contract governed and controlled by the laws of Missouri and the laws of Louisiana do not control, govern or affect plaintiff's right to file suit and recover in her petition herein.''

It is noted that defendant, in its answer, construed the petition as sounding in tort. It thereby first made the issue as to the construction of the petition, and thus required, and entitled, plaintiff to state definitely whether her cause was in tort or upon contract. Having the right to sue in either, having filed a petition which sounded in either, and being faced with defendant's interpretation of her petition, she clarified the nature of her cause. She was entitled to elect, and this she did in her reply wherein she made clear that her cause was founded upon contract. See 1 C. J. S. 998, 999.

Respondent cites Canaday v. United Rys. Co., supra, and Barnhoff v. Aldridge, 327 Mo. 767, 38 S. W. 2d 1029. In the Canaday case, where the nature of the cause of action was *not specifically put in issue,* the court of appeals held that an ▮ instruction requiring plaintiff (passenger) to prove an express contract was properly refused. In the Barnhoff case, where the allegations of the petition sounded both in contract and tort (malpractice by a physician), the trial court sustained a demurrer to the petition on the ground that the cause was barred by what is now Sec. 1016. We there held that, *upon demurrer, that petition* was in tort and that the cause was barred by Sec. 1016.

In White v. Scarritt, supra, the petition sounded both in tort (extortion and duress) and upon contract (money had and received). We approved the trial court's action in overruling defendant's demurrer to the evidence, holding that *that petition* sounded in tort. See also Banks v. K. C. Rys. Co., 280 Mo. 227, 217 S. W. 488. In the pending case, however, the allegations of the answer and of the reply do not permit *this petition* to be construed as being other than upon the contract of carriage. It follows that since plaintiff's cause of action was not one created by or arising under the laws of Louisiana, the statutes of that state are not applicable; that the cause was not barred by Sec. 1014; and that the trial judge erred in sustaining defendant's motion and in entering judgment for defendant.

▮ In view of which, we must pass upon respondent's contention that the verdict was excessive. This requires consideration of the evidence in the light most favorable to plaintiff. Plaintiff testified: That when the car was derailed she was thrown violently, the right side of her head and body striking the side of the car; that she sustained external bruises upon her right shoulder, arm, hip and thigh; that she was dizzy, could not walk and had to be assisted out of the car. That, taken to New Orleans, she went to bed and was treated for several days by defendant's doctor; that she had dizzy spells and that her "knees would give way"; that she arrived in St. Louis, January 10, 1947, and that on January 12, 1947, she consulted Dr. Frank L. Morse, who told her that her "nerves were practically shattered," prescribed rest and took her to Christian Hospital where she remained under his care until February 24, 1947; that for the first 3 weeks she remained in bed and was given diathermy treatments for her right hip, and "nerve medicine"; that during this time she suffered pain "from the waist up"; that after 3 weeks she began walking, and at first had to be assisted by nurses; that she suffered pain in her right leg and above the hip bone in the middle of the back, and in her neck and head; that during April, May, July, August and September, 1947, Dr. Morse continued the diathermy treatments about 3 times a week and gave her nerve medicine; that about the

middle of September, 1947, she consulted Dr. Jostes at Barnes Hospital, who several times treated her with a mechanical device for twisting her neck (and that this failed to help her), and took X-ray photos of her back and hip; that she then, at Dr. Jostes' suggestion, purchased a ''corset-like'' device, which was a brace around the middle of the body; that she wore this 2 or 3 months, but it became unbearable; that defendant paid all her hospital, doctors' and appliance bills except several totaling $160 which she paid; and that she had had no trouble previously with her nerves or the other ailments for which she was treated.

The medical evidence (all submitted by plaintiff) consisted of the testimony of Dr. Frank L. Morse and Dr. Francis M. Barnes, Jr. Dr. Morse was an orthopedic specialist and was physician for defendant. Plaintiff had been under his daily observation and supervision while in Christian Hospital and thereafter had been treated by him during the spring and summer of 1947. He testified that when she entered the hospital she had contusions of the back, chest, leg and hip; that there were no fractures; that she complained of nausea, pains in her stomach, neck, and right side and leg, and loss of strength in both hands; that X-ray photos of the neck, skull and chest were negative, and showed nothing abnormal; that she had ''a sacroiliac strain of some kind,'' and that such opinion was based on the knowledge of the place of the pain and the symptoms and not upon X-ray photos; that an X-ray photo of the pelvis was taken and would have shown an injury to the sacroiliac joint if there was ▮ much disturbance (apparently, the hospital records offered by plaintiff did not include an X-ray photo of the pelvis); that she was nervous and for a while he treated her neck by a ''collar''; that she had difficulty walking (after being in bed for 3 weeks) due to pain in the right leg, and that this may have been due to a strain in the sacroiliac joint; that while the 3 weeks in bed affected her inability to walk immediately, so also did her injuries; and that when she was discharged from the hospital she ''was walking and was much better.''

At her request, Dr. Barnes, authority upon nervous and mental diseases, examined plaintiff the night before the trial. It was his opinion, based upon her ''case history'' as stated by her, and certain physical tests that: Plaintiff ''has a nervous system which in general is not functioning properly. It is a post traumatic cerebral syndrome. * * * It is of a functional character. * * * There is nothing specific localizing an organic injury of the central nervous system, the peripheral nervous system.'' He stated that the condition ''has been going on a little better than two years and she still has an emotional instability and a sensory disturbance and reflex disturbance, that is, immediately, right now, the effects of the injury had cleared up, the bruises and all that reaction, and she has the after

effects of what could be said to be a severe shock to the nervous system, but as to its ultimate outcome, I couldn't say in time. I think there will always be some traces of it, but there won't be as much as there is now. * * * I think that the shock to her nervous system will remain and she will react differently than normal as a result of the shock. * * * That change in the nervous system which produced this nervousness and unstability will remain so she will be more subject to upset. The thing that ordinarily wouldn't upset a person will throw her off balance.''

Plaintiff was asked what she, at the time of the trial, suffered "from that came from the injuries." She replied, "Well, I would say my nervous condition is mainly the thing and my hip and back.'' She described her nervous condition as being one where "I can't stay still and I can't enjoy a movie or baseball game and when I am spoken to abruptly, I will say, I start crying." To the question, "How often does this happen, just your best judgment?" she gave, according to the record, "no response." She stated that the nervousness made her "more irritable," and that "when I get these nervous things I get a headache with it.'' According to the record, once plaintiff "wept on the stand" during the trial.

Plaintiff further testified: That she had been working in December, 1946, at $160 per month; that she returned to work October 5, 1947, at $145 per month and worked over 14 months; that when she quit, December 15, 1948, she was drawing $160 per month; that her work was general office work; and that she answered the phone (which rang between 2 and 8 times a day), did bookkeeping all day for 3 or 4 days a month and the rest of her time was spent typing envelopes. There was no evidence that either her physical or nervous condition prevented her properly doing her work after October 15, 1947, or why she quit work December 15, 1948, or why she had not worked between that date and the time of the trial the following month. Plaintiff did not testify that she was unable to work or was forced to quit work as a result of either her physical injuries or the nervousness resulting therefrom.

Upon plaintiff's own evidence, then, she had recovered from all of her *physical* injuries save and except those resulting from a strain in the sacral nerve canal. There was evidence that plaintiff still suffered some from this strain, but there was no evidence either as to the frequency and degree of such suffering or as to the possibilities of the permanency of the strain. Dr. Morse did not testify as to these matters and, as we understand the testimony of Dr. Barnes (quoted above), in his opinion, if the strain had not then disappeared, in time it would. Plaintiff sustained no fractures or other severe bodily injuries. She is not paralyzed; she has not lost the use of arm or leg and, with the possible exception of her right leg, the use of her limbs has not been even impaired. She has not lost

sight or hearing. There was no evidence that her health generally had been adversely affected.

We have quoted, in its entirety, all of plaintiff's own testimony, and also the testimony of the two doctors, as to her nervous condition. That condition is functional and not organic. There were no nervous prostrations, and no symptoms of deferred shock, of neurasthenia, or of hysteria. Granting that her nervous condition resulted from the sacral canal strain and granting that it is permanent, the nervous condition which she and the doctors described is neither abnormal nor unusual.

We have recently restated the rule relating to excessiveness of verdict in personl injury cases: That, under desirable (yet difficult-to-apply) standards of uniformity, the decision in each case must be based upon the facts of that particular case. O'Brien v. L. & N. R. R. Co., 360 Mo. 229, 227 S. W. 2d 690, and Prince v. K. C. So. Ry. Co., 360 Mo. 580, 229 S. W. 2d 568. Applying these principles here, we are of the opinion that the $12,500 verdict was excessive. We have considered the evidence in the light most favorable to plaintiff. But this principle of favorable consideration cannot be invoked to supply missing evidence or be used as a basis for unreasonable or speculative inferences favorable to plaintiff. Thus, where there was no showing whatever that plaintiff's future earning power had been impaired, we are not justified in inferring that it was. Again, there being no showing either as to the permanency of the sacral canal strain or the degree or frequency of the resultant suffering, we cannot make assumptions as to these matters.

The facts involved in the decided cases vary as to age, sex, physical condition, and earning capacity of plaintiff (and the degree of impairment thereof), and the nature, extent and permanency of the injuries. However, the following cases involving personal injuries to women will be of interest: Welch v. Thompson, 357 Mo. 703, 210 S. W. 2d 79 ($15,000 not excessive as to 46 year old plaintiff sustaining severe spinal injury and permanent depreciation in earning power); Van Campen v. St. L.-S. F. Ry. Co., 358 Mo. 655, 216 S. W. 2d 443 ($25,000 reduced to $15,000 as to 36 year old plaintiff sustaining, among other injuries, fracture of sacroiliac joint resulting in deformed hip and loss of earning power); Plater v. Kansas City, 334 Mo. 842, 68 S. W. 2d 800 ($10,000 not excessive as to 20 year old plaintiff sustaining injuries, more serious than plaintiff's here, requiring her to quit work); Jones v. K. C. Pub. Serv. Co., 236 Mo. App. 794, 155 S. W. 2d 775 ($5,333.33 not excessive as to plaintiff sustaining, with other injuries, a sacroiliac strain, receiving treatment similar to plaintiff's here, and resultant nervous condition worse than plaintiff's here, and no diminution of earning power being involved); and Irwin v. St. L.-S. F. Ry. Co., 325 Mo. 1019, 30 S. W. 2d 56 ($10,000 not excessive as to 21 year old plaintiff receiving shock

similar to that initially received by plaintiff here which subsequently resulted in a serious permanent nervous condition, including intermittent periods of unconsciousness lasting several days, and hysteria).

For comparison purposes, see also the following cases involving injuries in the sacroiliac region in men: Semler v. K. C. Pub. Serv. Co., 355 Mo. 388, 196 S. W. 2d 197; Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S. W. 2d 883; and Gately v. St. L.-S. F. Ry. Co., 332 Mo. 1, 56 S. W. 2d 54. See also Zichler v. St. L. Pub. Serv. Co., 332 Mo. 902, 59 S. W. 2d 654, where we reduced a $15,000 judgment to $10,000 as to a 39 year old plaintiff sustaining spinal injuries which permanently caused pain and inconvenience in bodily movements and impaired his earning capacity.

Taking into account the nature and extent of plaintiff's injuries, the resulting nervous condition, her suffering, the expenses she incurred, the time lost in work and the effect upon her pecuniary condition, we believe $7,500 to be the maximum plaintiff should recover. Therefore, if plaintiff will, within 15 days from the date of filing this opinion, enter here a remittitur of $5,000, the judgment will be reversed and ▆ the cause remanded with directions to enter judgment in favor of plaintiff, as of the date of the original judgment, for $7,500. Otherwise, the judgment will be affirmed. It is so ordered. *Van Osdol* and *Aschemeyer, CC.*, concur.

PER CURIAM:— The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.