THOMAS L. O'BRIEN, Respondent, v. LOUISVILLE AND NASHVILLE RAILROAD COMPANY, a Corporation, Appellant, No. 41521—227 S. W. (2d) 690.

Division Two, March 13, 1950.

230

*Wilton D. Chapman* for appellant.

*Roberts P. Elam* and *Harvey B. Cox* for respondent.

 WESTHUES, C.—In this suit plaintiff asked damages under the Federal Employers' Liability Act against the defendant railroad company for injuries alleged to have been sustained while he was at work as a member of a switching crew. A trial resulted in a verdict for plaintiff in the sum of $100,000. The trial court by requiring a remittitur reduced the amount to $55,000 and entered judgment for that sum. The defendant appealed to this court.

Appellant under points I, II, and III of its brief challenges the sufficiency of the evidence to sustain the verdict. Point IV pertains to the giving of an instruction. Point V covers a ruling on the rejection of alleged expert evidence and in point VI appellant says that the verdict is so excessive as to disclose misconduct, passion and prejudice on the part of the jury. The evidence shows the following: Plaintiff was alleged to have been injured in an accident which occurred at about 6:30 or 7:00 o'clock on the evening of October 22, 1947, in the Nashville Terminal Yards at Nashville, Tennessee. Plaintiff and the train crew of which he was a member were switching cars in the yards. At the time plaintiff was injured, a box car attached to the tender of an engine was being pushed toward an industrial plant where it was to be loaded. At the entrance of the industry was a gate. It was plaintiff's duty to give a signal to the engine crew to stop so plaintiff could open the gate and then give a signal to proceed. Plaintiff was riding at the front of the car which was going at a speed of 2 or 3 miles per hour. When a short distance from the gate, plaintiff stepped off the car and, as he did so, he stumbled or fell over a chain which had been fastened to the track and drawn through a fence and attached to a truck. It was dark at the time and plaintiff testified he did not see the chain. The car moved about 40 feet or so before it stopped. Plaintiff testified he fell and rolled under the car which passed over him and that he managed to get out from under the car by going between the car and the tender of the engine. He stated he remembered nothing that happened thereafter until three days later when he regained consciousness at a hospital. An employee of the E. T. Gregory Company testified that on October 5 he fastened the chain to the track and the truck for the purpose of holding the truck which was being used in lowering some machinery from an upper floor of an adjoining building.

It will be necessary to state other facts in connection with the points made by the defendant. First, appellant says that plaintiff had been employed by and at the time of the accident was working for the Nashville Terminals. Plaintiff testified that he had been employed by the defendant Louisville and Nashville Railroad for eight years and was working for that company at the time he incurred the injuries. On further examination he stated he worked for both the defendant company and the Nashville, Chattanooga and St. Louis Railroad. Other evidence indicated that the Nashville Terminals was owned by the two named companies; the defendant owned 51% and the N. C. & St. L. Ry. Co., owned 49%. The evidence further showed that plaintiff was taken to a hospital and treated by doctors who were paid by the defendant company. A jury was justified in finding that plaintiff was an employee of the defendant company.

Defendant says that at the location where plaintiff was injured the tracks were owned by the N. C. & St. L. Ry. Co. The evidence seems to justify the statement that the two named companies indiscriminately used the yards referred to as the Nashville Terminals. The fact, if it be so, that the portion of the track where plaintiff was injured belonged to the N. C. & St. L. Ry. Co., is immaterial. Terminal R. Ass'n. of St. Louis v. Fitzjohn, 165 Fed. (2d) 473, 1. c. 476, 477 (2).

It is also alleged that the evidence failed to show any negligence on the part of the defendant. It is true that the chain which caused the plaintiff's injury was placed there by a trespasser. However, it was shown that the chain had been there 17 days. It was plainly visible in the daytime. The track was used a number of times during the 17 days. Trainmen, witnesses for the defendant, testified that they would have reported it if they had noticed it. They considered its presence as creating a dangerous condition. A jury was authorized to find from the facts proven that the defendant was negligent in not furnishing plaintiff a reasonably safe place in which to work. What we have said also disposes of points II and III in which the defendant urges that the trial court should have set aside the verdict and that the court erred in giving each and every instruction because there was no issue for the jury to consider.

Error was assigned to the giving of plaintiff's instruction No. 5. At defendant's request the court gave an instruction, No. 4, the substance of which was that if the negligence of Craddock, who placed the chain on the railroad property, caused plaintiff's injuries, and that said injuries were not caused by any negligence of the defendant, then the verdict should be against plaintiff. Instruction No. 5 of which defendant complained informed the jury, in substance, that if the jury found from the evidence that Craddock was negligent and the jury further found that the defendant was also negligent as outlined in instruction No. 1, and that the negligence

of Craddock and that of the defendant directly concurred and combined in causing the injury to plaintiff, then the verdict should be for plaintiff. It was not necessary for the court to give this instruction. However, it was a correct declaration of the law and the only criticism that could be made is that it was surplusage. Defendant cited the cases of Zesch v. Abrasive Co. of Philadelphia, 353 Mo. 558, 183 S. W. (2d) 140, ▓▓▓ l. c. 146 (15-18), and Reeves v. Lutz, 191 Mo. App. 550, 177 S. W. 764. The injury in the Zesch case was caused by the explosion of a wheel. The trial court granted plaintiff a new trial for the reason that the court was of the opinion that in two instructions the jury had been advised that the defendant could not be found to have been negligent merely because the wheel broke. This court held the instruction stated the law correctly but affirmed the action of the trial court on the theory that the granting of a new trial in such circumstances is largely discretionary. The case does not support defendant's contention. In Reeves v. Lutz, supra, the trial court, as will be noted in the quotation following, admitted incompetent and prejudicial evidence pertaining to the question of the care, and skill required of a surgeon. The appellate court said: (177 S. W. 765, 766)

"Especially were these questions and answers prejudicial in the instant case, when the several instructions given on the part of defendant are considered in connection therewith. Four separate instructions given by defendant iterated and reiterated the same proposition of law to the jury, though in different phraseology, to the effect defendant was only required to exercise reasonable care; that is, such as an ordinarily skillful and careful surgeon is accustomed to exercise in like surgical operations under similar circumstances in the same locality, and that he should be acquitted of fault if he did this."

It is evident that the case before us presents no such proposition. The point must be ruled against the defendant.

▓▓▓ Next, defendant complained because the trial court rejected evidence of a witness for the defendant to the effect that it was a physical impossibility for plaintiff to have fallen under the car in the manner claimed by plaintiff. Plaintiff did testify that he in some manner fell under the car after tangling with the chain, and that the car rolled over him. Plaintiff testified he did not remember anything which occurred after he came from under the car until about three days later. Members of the crew testified plaintiff soon after the accident talked incoherently and fainted before an ambulance arrived to take him to a hospital. The trial court did not err in rejecting the evidence in question. It may be doubtful whether plaintiff stumbled or fell between the wheels of the car and pulled himself from in front of the wheels under the car as he testified. However, whether it was possible or not, was hardly the subject of

expert evidence. Plaintiff may have been dazed as a result of a head injury and not have remembered just what happened after the fall. Whether plaintiff did or did not fall under the car was immaterial. There was an abundance of evidence that plaintiff fell over the chain and was injured. Defendant cited a number of authorities including 20 Amer. Jur. 686, Sec. 817. In this case we are of the opinion that the members of the jury were competent to judge the matter and no expert evidence was necessary.

Now we come to the ever vexing question of whether the judgment as entered for $55,000 after a remittitur of $45,000 is so excessive as to justify our interference; also whether the verdict of $100,000 was so excessive as to show passion and prejudice on the part of the jury. This question has been before this court many times. We have examined the matter time and again as evidenced by recent cases from each division of this court. See Counts v. Thompson, 359 Mo. 484, 222 S. W. (2d) 487 (Div. 1), and Joice v. M. K. & T. R. Co., 354 Mo. 439, 189 S. W. (2d) 568 (Div. 2), 161 ALR 383.

After an examination of many cases we conclude the rule in this state to be that an excessive verdict in and of itself does not establish that the verdict was the result of passion and prejudice. In Slater v. Atchison, T. & S. F. Ry. Co., 224 Mo. App. 824, 24 S. W. (2d) 660, l. c. 666, the court said:

"From the testimony the jury could find that the plaintiff received a permanent injury to his arm of a serious nature and we think a recovery of $4,500.00 is not excessive. The fact that the verdict for $12,500.00 and was excessive in the sum of $8,000.00, does not of itself alone, without showing any other error committed in the trial, establish that the verdict was the result of passion and prejudice requiring the judgment to be reversed and the cause remanded. Willitts v. C. B. & Q. R. R. (Mo. Sup.) 221 S. W. 65, 66; Cook v. Globe Printing Co., 227 Mo. 475, 551, 127 S. W. 332."

This court in Kimberling v. Wabash Ry. Co., 337 Mo. 702, 85 S. W. (2d) 736, l. c. 743, said:

"The mere size of a verdict for damages for personal injuries, although it be necessary to reduce it one-half or more, does not indicate passion or prejudice. Greenwell v. Chicago, M. & St. P. Ry. Co. (Mo. Sup.) 224 S. W. 404; Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S. W. (2d) 1079; Varley v. Columbia Taxicab Co. (Mo. Sup.) 240 S. W. 218, 219; Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, 288 S. W. 777; Spencer v. Quincy, O. & K. C. R. Co., 317 Mo. 492, 297 S. W. 353. Taking above cases in the order cited, the verdicts were reduced as follows: From $45,000 to $15,000; from $18,800 to $8,800;

from $40,000 to $18,000; from $85,000 to $35,000; from $41,375 to $10,000. Where, as here, there is no substantial basis for a charge of bias and prejudice and plaintiff consents to a reasonable remittitur, defendant cannot complain though the judgment is based on a verdict, the original amount of which was excessive. Dees v. Skrainka Construction Co., 320 Mo. 839, 8 S. W. (2d) 873.''

Defendant has not called to our attention, and we failed to discover, any incident occurring during the trial of this case that would tend to prejudice the jury against the defendant. We, therefore, rule that the verdict of $100,000 is not sufficient grounds to grant a new trial:

Is the judgment of $55,000 as entered after remittitur excessive? · There is an abundance·of expert medical evidence in the record. If our count is correct, twelve doctors testified. Plaintiff was examined from time to time by experts in various fields of medicine, such as a specialist in surgery, radiology and medicine, a specialist in diseases and disturbances of the mental and nervous systems, an orthopedic surgeon, a diagnostician, a specialist in the neurological field of medicine, and a doctor specializing in neurology and electroencephalography. The result of all these examinations and the evidence of the doctors may be summed up in a few lines. From such evidence we find plaintiff's injuries to be partial paralysis of the entire left side of the body including almost total blindness in the left eye. Plaintiff also has a slight tremor on the right side. This condition of plaintiff is due to an involvement of the brain. All of the doctors agreed that plaintiff suffered no broken bones or any severe visible bruises as a result of the accident. Doctors testified further that plaintiff has an hysterical neurosis caused by a contusion of the brain. Two doctors testified that this hysteria would probably diminish after the end of this litigation. Plaintiff's doctors testified that he would not be capable of doing sustained manual labor such as climbing on box cars or carrying out other duties required of a switchman, and that this condition was of·a permanent nature. Plaintiff stated that he was unable to perform any labor. He testified that he was, at the time of the trial and had been for a year or more, engaged in a dairy business in partnership with his father-in-law. On cross-examination he testified he had on several occasions driven a truck, lifted milk cans, and performed other duties which did·not require much manual exertion. It appears from the evidence that plaintiff is unable to use his left arm to any appreciable extent. His right arm is weakened because of the tremor. Plaintiff, however, is able to get about unassisted and is able to attend to business matters, and to perform small tasks which do not require much physical strength. At the time of the accident plaintiff was thirty-three years old and his average wage had been about $300 per month.

238

Taking the evidence in its most favorable light to plaintiff, we must conclude that the judgment of $55,000 is excessive. We have examined many cases and made comparisons as to the injuries and to the amounts of the verdicts. Plaintiff urges that the decreased value of the dollar must be taken into consideration. A study of the cases decided by this court will disclose that we have given due consideration to the theory advanced. Among the cases cited by plaintiff we find Hill v. Terminal R. Ass'n. of St. Louis, 358 Mo. 597, 216 S. W. (2d) 487, and Counts v. Thompson, supra. Plaintiff's injuries in this case are of a more serious nature than those Hill sustained. Hill obtained a verdict in the sum of $25,000 which was reduced by this court to $15,000. Hill was an older man than the plaintiff in the present case. On the other hand, plaintiff's injuries cannot be compared with those of Counts whose legs were amputated above the knees and who sustained other serious injuries. Counts obtained a verdict in the sum of $165,000. By remittitur, one in the trial court and the other by this court, the sum was reduced to $80,000. We find that to be the largest amount ever to be sustained by this court in a personal injury case.

We deem the injuries in this case to be of a more serious nature but to a great extent comparable to those sustained by the plaintiff in Smiley v. St. Louis-San Francisco Ry. Co., 359 Mo. 474, 222 S. W. (2d) 481, decided in July, 1949. The verdict of the jury was for $50,000. This court by remittitur reduced the amount to $27,500. As was there said, each case must be considered upon its own facts, while at the same time the court is presented with the vexing question of maintaining a standard of uniformity in judgments in personal injury cases.

Considering all the facts and elements in this case in connection with the adjudicated cases, we deem $30,000 to be the maximum amount plaintiff should recover. If, therefore, plaintiff will within 15 days enter a remittitur in the sum of $25,000, the judgment will be affirmed for $30,000 as of the date of the verdict. Otherwise, the judgment will be reversed and the cause remanded. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.