FRANCIS A. OSBURN, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, a Corporation, Appellant, No. 41433—230 S. W. (2d) 856.

Division One, June 13, 1950.

*Cyrus Crane, Winston H. Woodson* and *James F. Walsh* for appellant.

814

*E. E. Thompson, E. R. Brouse* and *Sam Mandell* for respondent; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

 LOZIER, C.—Appellant (hereinafter referred to as defendant) appeals from a judgment for damages for personal injuries sustained by respondent (hereinafter referred to as plaintiff) as a result of defendant's negligence. Plaintiff obtained verdict and judgment for $40,000, and, at the trial judge's suggestion, remitted $15,000. Whereupon defendant's motion for directed verdict or for new trial was overruled and judgment was entered for $25,000. The issues here stem from the alleged excessiveness of both the $40,000 verdict and of the $25,000 judgment.

 Defendant's first point is that the trial court's conditional order suggesting the remittitur was an abuse of discretion. Defendant says that such order contained the recital that, if the remittitur was not entered, defendant's motion for new trial would be sustained "because the verdict of the jury was grossly excessive, as alleged in paragraph 15 of defendant's motion for a new trial"; and that, by the use of the words "grossly excessive," the court, "in legal effect, ruled and inferred that the jury was biased and prejudiced against this defendant." However, this language must be considered with the other grounds assigned in the motion for new trial, and with the other recitals of the conditional order and of the judgment itself.

Among the separate grounds set out in defendant's motion for new trial were: "(14) that the verdict was excessive; (15) that the verdict was grossly excessive; and (16) that the verdict was so excessive as to show on its face that it was the result of bias and prejudice in favor of the plaintiff and against the defendant."

The order suggesting the remittitur was: "Now on this day the court, having considered motion of defendant for judgment in accordance with its motion for directed verdict at the close of plaintiff's evidence and its motion for directed verdict filed at the close of all the evidence and its motion for a new trial, arguments of counsel for the parties on said motions heretofore having been heard by the court, now indicates that if plaintiff will within fifteen days from this date remit the sum of fifteen thousand ($15,000.00) dollars

from the verdict of the jury as of January 12, 1949, said motions will be overruled, otherwise defendant's motion in accordance with its motion for directed verdict at the close of plaintiff's evidence and defendant's motion for directed verdict at the close of all the evidence will be overruled, and defendant's motion for a new trial will be sustained because the verdict of the jury was grossly excessive, as alleged ▬▬ in paragraph 15 of defendant's motion for a new trial.''

The judgment was: ''The court having fully considered the motion of defendant for a new trial and for judgment on its motions for directed verdict and the arguments of counsel and the authorities, and the court having expressed the view that the verdict of $40,000.00 rendered by the jury and the judgment thereon is excessive to the extent of $15,000.00, and having ruled that unless plaintiff remits said sum off of and from said judgment the motion for a new trial will be sustained on the ground of excessiveness, and that if such remittitur is made, such motion will be overruled, and plaintiff in obedience to the suggestion of the court having filed written remittitur herein in the amount of $15,000.00 and accrued interest on the original judgment, NOW, the verdict of the jury and the judgment thereon in the amount of $40,000.00 is by the court set aside and new judgment in lieu and instead thereof is entered in the amount of $25,000.00 and THEREFORE, it is ordered, considered and adjudged by the court that plaintiff have and recover of and from defendant the sum of $25,000.00,'' etc.

It plainly appears that the basis of the trial court's ruling was excessiveness alone and not excessiveness due to passion and prejudice. He did not assign the latter ground although it was specifically urged in the motion for new trial. The inference which defendant would have us draw from the use of the word ''grossly'' is not justified and we rule this point against defendant.

Defendant has assigned no errors other than those arising out of the amount of the verdict and the conditional remittitur order. This court has many times ruled that the amount of the verdict, in and of itself, is no indication that the verdict was the result of passion and prejudice on the part of the jury. O'Brien v. L. & N. R. Co., 360 Mo. 229, 227 S. W. 2d 690.

The cases cited by defendant treat of the relative discretion of trial courts and appellate courts in ordering remittiturs and in setting verdicts aside because of the passion and prejudice of juries. In Bente v. Finley (Mo. App.), 83 S. W. 2d 155, the appellate court found the verdict was ''unauthorized by any evidence.'' In both Jones v. Penn. R. Co., 353 Mo. 163, 182 S. W. 2d 157, and Sofian v. Douglas, 324 Mo. 258, 23 S. W. 2d 126, wherein we discussed the difference between ''excessiveness'' and ''excessiveness indicating passion and prejudice,'' the latter ground had been expressly as-

signed by the trial judge. In Stokes v. Wabash R. Co., 355 Mo. 602, 197 S. W. 2d 304, we held the issue of excessiveness was not before us where the ground assigned in the motion for new trial was excessiveness due *both* to jury passion and prejudice *and* absence of supporting evidence.

In contending that the judgment for $25,000 was excessive, defendant reviews the evidence and argues the weight to be given the medical testimony. However, both the jury and, in turn, the trial court, who heard the testimony and observed the witnesses, have considered and weighed the evidence. Plaintiff established below that he sustained certain injuries as a result of the collision due to defendant's negligence. It is not for us to determine whether he sustained such injuries but whether the judgment given for such injuries is excessive. And, of course, we are to view the evidence in the light most favorable to plaintiff.

Plaintiff, a railway mail clerk, was driving to Union Station, Kansas City, to report for work, Sunday, January 19, 1947. About 7:30 a. m., he was injured in a collision between his automobile and one of defendant's freight trains. Plaintiff, unaccompanied, was driving his coach-type car with divided front seats with movable backs. The grade crossing at 15th Street was blocked by the train and he pulled his car behind several other stopped cars and waited for the crossing to clear. The train was "cut," and the crossing cleared. Defendant's watchman motioned the cars to proceed. As plaintiff was crossing the tracks the train was suddenly backed up and plaintiff's car was struck by a railroad coal car. The first impact knocked the front end of plaintiff's car to his left and the coal car struck the automobile again and pushed it about 20 feet across the intersection. He was first thrown to the right, over the right front seat, his head hitting the right side of the car, and then thrown to the left, his left side hitting the left seat, which had "tilted" forward. His shins and left side were bruised.

After the train stopped, plaintiff got out of the car and, with the help of several trainmen, unhooked the bumper of the coach from one of the "stirrups" of the coal car and drove to the station. He felt a severe burning in his left side and pain in his back and was nauseated. He stopped several times to vomit.

He was pale, shaking and upset when he arrived at Union Station, but made his "run" to Ellis, Kansas. He had a severe headache, general feeling of shock and severe back pains. He had a large lump on upper right portion of his head. He could not perform his work well because his duties required him to stand up in the moving car and several times had to lie down on mail sacks. He made the return trip to Kansas City Monday, and on Tuesday went to the office of Dr. Paul Moss.

Plaintiff complained to Dr. Moss that coughing would aggravate a pain in his back and said he had pains in his abdomen, head and neck. Examination disclosed a bruise on plaintiff's head, and an incisional scar over the left lumbar region. There was soreness and spasms in the muscles of the neck, in the area of the scar, in the entire lumbosacral region, and in the upper part of the stomach and left kidney areas. The motion of the neck was limited. Urinalysis tests and X-ray photos indicated a traumatic injury to the left kidney, "a traumatic tissue tear," which, in the opinion of Dr. Moss, was not due to the 1945 operation. His diagnosis of the back injury was a sprain of the lumbosacral joint. He bandaged plaintiff's back that day.

Dr. Moss gave plaintiff diathermy treatments and had him wear a brace or support for his back. X-ray photos of plaintiff's back and neck, taken in November, 1948, showed the presence of a "loose calcified body" between the 5th and 6th cervical vertebrae. The X-ray photos showed narrowing of the 3rd and 4th lumbar vertebrae, and irregularities indicating bone changes due either to trauma or lumbosacral sprain over a period of years. Dr. Moss testified that, in his opinion, this "lipping" was an "arthritic type of change."

Dr. Moss stated that plaintiff "has a sprain of the lumbosacral joint with bony changes due to the injury; the back is limited in its motion and function; he has a sprain of his left hip; he has possible traumatic headaches and a sprain of the cervical vertebrae due to tearing of the ligaments; and he had a permanently partial disability of 40%." He stated that it was not uncommon to find arthritic changes in a man of plaintiff's age, that a person with hypertrophic arthritis would be more susceptible to injury than one without it, and that trauma would aggravate that condition and cause it "to light up" and become more painful. In his opinion, plaintiff's back condition was permanent and plaintiff was totally disabled from performing the work of a railway mail clerk.

Dr. B. A. Poorman examined plaintiff the night before he testified. He stated that plaintiff's neck muscles were stiff and "corded," and that his neck muscles, especially on the left side, were rigid; that there was tenderness over the sacroiliac notch; that plaintiff had a pelvic injury, and that ligaments in the cervical region were torn; that a person might have arthritis and not be disabled in any way, but then an injury might "light up" the arthritis and aggravate it; and that plaintiff, in his opinion, was totally and permanently disabled from performing the manual labor required of a railway mail clerk.

The testimony of defendant's medical witnesses tended to corroborate that of plaintiff's doctors. Dr. C. E. Virden did not believe that the X-ray photos of plaintiff's skull and spine showed evidence

of trauma but did show changes due to degeneration or hypertrophic in nature. He agreed, however, that a person suffering ▓▓▓ from hypertrophic arthritis would be more susceptible to injury from trauma.

Dr. Harold V. Zuber, orthopedist, stated that he had found plaintiff's cervical spine motions limited 35% and his lower spine movements limited 25% in all directions; and that his X-ray photos showed cervical and lumbar spine osteoarthritis of long standing. He said that a sprain of the muscles and ligaments of the back and neck could cause arthritic changes; that in plaintiff's case such a strain would aggravate his pre-existing arthritic condition; that, in his opinion, plaintiff would suffer at his work; and that he (Dr. Zuber) would advise a man with plaintiff's neck and back not to do hard, strenuous labor.

Plaintiff testified that prior to January 19, 1947, his health had been excellent; that he had had a kidney stone removed by surgery in 1945, but had suffered no ill effects from the operation; that prior to the accident he had experienced no pain, suffering or limitation of movement of his spine, neck, shoulders or back; that at the time of the trial he suffered from severe pains in his back, neck and left leg; that his neck pains, while intermittent, were increasing in intensity and that at times his neck became stiff; that his left leg was lame due to intermittent pains from the pelvis down, and especially in the region where the leg joins the pelvis; and that his back motion was very limited.

Plaintiff was about 53 years old at the time of the accident, January 19, 1947, and about 55 at the time of the trial. He had been a railway mail clerk from November, 1916, until April, 1948, when he retired. His annual salary then was $4050. His work consisted of sorting mail delivered to the mail car at the terminals and at stops during the run, throwing it into the proper mail sacks, taking on the sacks at stop stations and putting them off at both stop and non-stop stations. It was necessary for plaintiff to do most of his work while standing and while the train was in motion with the car "swaying." He had to brace himself against such swaying. He described the work as being of a nature which required speed and was nerve-wracking. He testified that newspaper mail sacks were heavy, weighing about 125 pounds, and that at certain stops there were a large number of such sacks; that, for example, at Topeka, there were generally 180 or 190 such sacks delivered to his car; and that he and the other railway mail clerks would get them at the door and put them in stalls, some of which were 6 feet high.

Plaintiff returned to work in April, 1947. He performed his work with difficulty and suffered pain. He declined another run at a higher wage because it was considered a hard assignment and one which he felt he should not undertake because of his physical condi-

tion. In May, 1948, he applied for and secured another run, a "one-man run," which was not as strenuous as the one he then had. He retired in November, 1948, because he was no longer able to do the work and upon advice of his doctor. He testified that his salary ceased upon retirement and that he would have drawn the salary as long as he worked. One of plaintiff's neighbors and three railway mail clerks corroborated plaintiff as to his prior good health and ability to do hard work prior to the accident and as to his physical condition, and its effect upon his capability, after he was injured.

Since April, 1948, plaintiff and his wife had lived on an 80 acre farm, feeding 24 head of beef cattle on grass. He stated that watering the cattle was no work at any time and that feeding involved no work in summer. He had no difficulty in feeding the cattle in winter other than getting the hay out of the mow and he had a man come and put down the hay. He could "break a bale and do light work like that." His wife cared for the chickens. He didn't put out a garden that year because it was too wet. Plaintiff continued to drive his automobile.

Plaintiff's evidence was that his life expectancy at age 53 was 18.79 years, at age 54, 18.09 years, and at age 55, 17.40 years. Plaintiff here offered no evidence whatsoever as to hospital, doctor or medical expenses. In considering the evidence in the light most favorable to plaintiff, we cannot assume facts upon which the record is silent nor draw speculative inferences. Williams v. Ill. Cen. R. Co., 360 Mo. 501, 229 S. W. (2d) 1.

The excessiveness of an award for damages for personal injuries depends primarily upon the facts in that particular case. O'Brien v. L. & N. R. Co., 360 Mo. 229, 227 S. W. 2d 690, and Prince v. K. C. So. Ry. Co., 360 Mo. 580, 229 SW. 2d 568. "The question with which we are here dealing is one so frequently before the court that it would serve no useful purpose to restate the considerations affecting it, such as the size of awards permitted to stand in comparable cases, economic conditions, the fact there is no mathematical formula or accurate scale for determining whether and how much a verdict is excessive." Tatum v. Gulf, M. & O. R. Co., 359 Mo. 709, 223 S. W. 2d 418, 428.

Urging that $25,000 is not excessive, plaintiff cites: Bond v. St. L.-S. F. Ry. Co., 315 Mo. 987, 288 S. W. 777; Meierotto v. Thompson, 356 Mo. 32, 201 S. W. 2d 161; Margulis v. Natl. Enam. & Stamp. Co., 324 Mo. 420, 23 S. W. 2d 1049; Francis v. Term. R. Assn. of St. Louis, 354 Mo. 1232, 193 S. W. 2d 909; and Tatum v. Gulf, M. & O. R. Co., supra. Those plaintiffs sustained fractures and, with the exception of the plaintiff in the Meierotto case, their injuries required more hospitalization, necessitated more past and possibly future hospital, medical and surgical costs and resulted in greater

disability. All such plaintiffs (other than Tatum) were much younger than plaintiff here.

In Carpenter v. Wabash Ry. Co., 335 Mo. 130, 71 S. W. 2d 1071, and Zichler v. St. L. Pub. Serv. Co., 332 Mo. 902, 59 S. W. 2d 654, both involving aggravation of pre-existing arthritis, we held that the $15,000 judgments were excessive by $5,000. In neither, as in the instant case, were there fractures or dislocations. In the Carpenter case, plaintiff's age was not shown and in the Zichler case plaintiff was 39 years old. As here, both plaintiffs had been in good health, and were unable to do hard work after the accidents.

In Philibert v. Benj. Ansehl Co., 342 Mo. 1239, 119 S. W. 2d 797 ($19,833 reduced to $16,000), plaintiff, 52 years old, earning $8.50 per day, was hospitalized 9 weeks; thereafter he returned to work and "worked steady ever since." However, he could not do heavy work. His injuries consisted of 7 fractures of the spine, 3 broken ribs and a fractured sacrum. Like the present plaintiff, his body movements were limited and he suffered pain.

In Van Campen v. St. L.-S. F. Ry. Co., 358 Mo. 655, 216 S. W. 2d 443 ($25,000 reduced by $10,000), plaintiff, a 36 year old single woman earning $3,000 annually, sustained a spinal disc injury and a hip fracture with permanent deformity. She had expended over $1400 for hospital and medical services, and had not worked after she was injured.

Considering all the circumstances and factors here, we are of the opinion that $25,000 is in excess of the compensation to which plaintiff is entitled for the injuries and the damages he has sustained.

Therefore, if plaintiff will, within 15 days from the date of filing this opinion, enter a remittitur of $10,000, the judgment for $15,000 will be affirmed as of March 11, 1949, the date of the $25,000 judgment; otherwise, the judgment will be reversed and the cause remanded for a new trial. It is so ordered. *Van Osdol* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.