**Lawrence LANGE, Respondent,**

v.

**The KANSAS CITY SOUTHERN RAIL-WAY COMPANY, a Corporation, Appellant.**

**No. 44848.**

Supreme Court of Missouri.
Division No. 1.

April 9, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied May 14, 1956.

Richard S. Righter, Robert D. Youle, James F. Walsh, Kansas City, for appellant.

Arthur C. Popham, Sam Mandell, Kansas City, Sylvan N. Bruner, Pittsburg, Kan., for respondent. Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel.

COIL, Commissioner.

Lawrence Lange, plaintiff below, had a verdict for $76,000 in his action under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., for damages for personal injuries. Plaintiff remitted $26,000 in accordance with the trial court's conditional order, and appellant's motion for new trial, which included the specification that the judgment was excessive, was overruled. Appellant, defendant below, appealed from

the ensuing judgment and here contends that the trial court erred in giving plaintiff's damages instruction and that the judgment is still excessive.

Plaintiff, employed by defendant as a member of its "extra gang," was injured while helping fellow employees place a tamping machine (used to tamp chat on the roadbed) on defendant's tracks. No purpose will be served by describing the method used to place that machine on the tracks other than to say that plaintiff was lifting one side of the relatively light rear end of the machine and other employees were lifting the other side. The other employees "let go" and the entire weight of the rear end suddenly shifted onto plaintiff resulting in injuries, the nature and extent of which will be hereinafter described.

Plaintiff's damages instruction told the jury that in determining the amount to be awarded, it could consider various items, among which was "all reasonable and necessary medical expenses which you believe from the evidence have been incurred by him as a direct result thereof not exceeding on this item $1,374.50." Defendant contends that the foregoing clause was erroneous for these reasons: "First, there is no evidence in the record to show the amount of money plaintiff expended or obligated himself to pay for medicine, and, secondly, there is no evidence in the record from which the jury could determine the reasonableness of Dr. Rinehart's doctor bill."

Dr. W. G. Rinehart had treated and prescribed for plaintiff continuously from a few days after the accident until the time of trial some 3½ years later. Dr. Rinehart testified generally to the nature and extent of the treatments given and their frequency, as well as to the kind and amount of medicines and as to the kind of orthopedic appliance, which he prescribed. In answer to questions calling for his opinion, he stated that $1,000 would be a reasonable charge for the medical services he had rendered to plaintiff over the 3½-year period, including drugs which had been furnished plaintiff from the doctor's dispensary. There was no objection of any

kind to the questions, either before or subsequent to the answers, nor was there any subsequent motion to strike that testimony. On cross-examination, defendant's counsel developed that the doctor did not have with him his office records which disclosed the exact number of times he had seen plaintiff, the type of treatment given on each visit, the amount and kind of medicine prescribed, etc.

It would appear from the foregoing recitation of record facts that defendant's contentions as to the instruction are without merit. As to the contention that the evidence does not show the amount plaintiff expended or obligated himself to pay for *medicine,* suffice to say that the instruction did not authorize recovery for any amount expended or for which plaintiff obligated himself to pay for medicine as a separate item of damages. The only authorized recovery for medicines was a part of the "reasonable and necessary *medical expenses,*" and as we shall point out, there was substantial evidence of the amount of such medical expenses including medicines furnished.

The doctor gave his expert opinion as to the reasonable value of the medical services he had rendered and medicines which he had furnished from his own dispensary. There was no objection that the doctor was not qualified to give such an opinion and, in the absence of some showing to the contrary, the doctor, having rendered the services, was qualified to state his opinion as to their reasonable value. There can be no question but that opinion evidence adduced by a qualified expert is substantial, probative evidence based upon which a jury reasonably may award damages for the item covered. (There is no contention about the propriety of the $374.50 item making up the difference between $1,000 and $1,374.50, the latter figure having been mentioned in the instruction as the limit of allowable damages for medical services.)

Apparently, from the argument made, defendant is under the impression that because the mentioned records were

in existence and not produced, any opinion of the witness as to the reasonable value of the medical services he rendered was thereby without probative force or effect. It is true that the doctor's records would have been the best evidence as to the exact number of visits plaintiff made to the doctor's office, as to the number of and the type of each treatment the doctor had administered at the times of the various visits, as to the exact amount and kinds of medicines the doctor had prescribed and dispensed, and as to the dates of each prescription. But those matters related to the doctor's knowledge of the facts which formed part of the basis for his expert opinion. Cross-examination which tended to demonstrate the inaccuracy of the doctor's opinion as to the value of his services because of the absence of his records raised questions which went to the weight of the opinion evidence. There was, however, a substantial basis for the doctor's opinion because of his familiarity with the nature and extent of the medical services he had rendered, and, consequently, in the absence of a showing, by cross-examination or otherwise, which totally destroyed the probative value of that unobjected-to evidence, the doctor's opinion constituted substantial evidence and justified the instruction. See 32 C.J.S., Evidence, § 568h, pp. 385–388, § 569j(1), pp. 405–408.

The meritorious question on this appeal is whether the judgment, reduced by the order of the trial court from $76,000 to $50,000, is still excessive to the extent that we may hold that the trial court abused its discretion in limiting the amount of remittitur to $26,000. In determining that question, we, of course, consider the relevant and pertinent evidence from the standpoint most favorable to support the order of the trial court.

Plaintiff, 30 years old at injury time (33 at trial time), with a trial-time life expectancy of 33.21 years, had gone to work for defendant in February 1951 at a daily wage of $10. He had completed a seventh-grade elementary school education, after which he had done manual farm labor, worked for the Ford Motor Company at $12 a day, for the Santa Fe Railroad, a short time for defendant previous to the employment during which he was injured, and for E. K. Smith, a farm operator, where he received $10 a day for heavy work and $5 to $6 a day for lighter work. During the period 1942–1946 he was in military service where he sustained no serious or lasting disability, and at the time of the accident was attending night school under the "GI Bill" where he was taking courses in refrigeration, radio, and auto mechanics, the last two months of which courses he finished (with difficulty) subsequent to the accident.

Prior to his instant injuries, he was in good health, had theretofore sustained no serious injuries, his posture was erect, and his walk and speech were normal. Subsequent to the accident, his posture, walk, and manner of speech had become progressively worse until, at trial time, he gave a bent-over or humped appearance, walked in a humped-over position, with an unsteady, lurching gait, and spoke slowly and in a manner which made his speech difficult for hearers to understand.

He had earned nothing since the date of his injury. At trial time his back and both legs had been and were continuously painful; he had suffered severe headaches continuously about every ten days or two weeks; both his legs were numb, and he was generally weak. He had attempted since the accident to fulfil a job sweeping out a store but was unable to continue due to his disability and he had been unable to follow the trades he learned in the school, even though, as noted, he had completed those courses after the injury with much attendant physical difficulty.

Plaintiff said that at the time the weight of the rear end of the machine shifted to him he "went down" and it "felt like it tore my back in two" and caused him to cry from the intense pain in his back, stomach, and legs. He was sent to a company doctor who gave him some pink pills, and, on April 11, 1951, a week after the accident, he went to Dr. Rinehart. He said that Dr. Rinehart administered heat treatments and massage two or three times a week, and

dispensed medicine to him. He had been under Dr. Rinehart's care continuously to the time of trial and had continued taking sedatives for pain. He was not hospitalized at any time. He had worn a Taylor-type brace almost continously from a year after the accident to trial time.

Dr. W. G. Rinehart, an industrial surgeon of Pittsburg, Kansas, testified that he first saw plaintiff on April 11, 1951, and gave him a superficial examination, administering analgesic treatment. A week later plaintiff returned, complaining of the same pain in his lower back, at which time the doctor made a more extensive examination including the taking of X-rays. X-rays of April 17, 1951, showed a narrowing of the intervertebral space between the last lumbar vertebra and the sacrum and a congenital deformity in the body of the fifth lumbar vertebra. The doctor prescribed or administered analgesics to relieve pain, and gave light and heat treatments and light massage for a period of about a month following the accident to relieve muscle spasm, directed that plaintiff sleep on an orthopedic-type mattress or that a board be placed under plaintiff's regular mattress, and later prescribed a Taylor-type brace with metal stays which fit around the pelvis and up the back for the purpose of holding the back in the most rigid position possible. The doctor said plaintiff would need to wear the brace for a "long time."

X-rays of May 1954 disclosed the same narrowing of the intervertebral space between the fifth lumbar vertebra and the sacrum and also disclosed a narrowing between the fourth and fifth lumbar vertebrae as well as spurring on the lower anterior margin of the body of the sixth lumbar vertebra. Another group of X-rays taken in October 1954 disclosed the same conditions as the previous ones and, in addition, some lipping or spurring of the anterior margin of the sacrum. Various tests disclosed that plaintiff had complete anaesthesia in both legs and that by trial time the Achilles' reflexes and knee jerks were absent.

Dr. Rinehart's trial-time diagnosis was that plaintiff had suffered these injuries as a result of the April 4, 1951, accident: a herniated intervertebral disc between the fifth lumbar vertebra and the sacrum, traumatic arthritis of the lower back which was aggravated by the injury, a mental change which had occurred due to the patient's long suffering of pain which had manifested itself in slowness in speech and expression, and a very slight posterior slipping of the fifth lumbar vertebra. Dr. Rinehart further stated that the deformity of the body of the fifth lumbar vertebra, called a spina bifida, was a congenital condition which made plaintiff's back more susceptible to injury and to a resulting painful and disabling condition. He was of the opinion that plaintiff was not responding to the analgesic treatment which he was still administering, but that he continued it because it gave plaintiff some relief from pain and muscle spasm; that surgery was not indicated in plaintiff's case and that he would not recommend surgery for plaintiff because he was sure that it would not cure the back condition; that plaintiff's condition at trial time was permanent, that it disabled him from performing any manual labor and from holding any sort of a job of which the doctor had knowledge.

Dr. Jacob S. Hoffman, a diagnostician in Kansas City, testified that plaintiff was referred to him on April 11, 1952 (a little more than a year after the accident); that his preliminary diagnosis of a ruptured disc was confirmed by a later examination by an orthopedic surgeon to whom Dr. Hoffman referred plaintiff. He was of the opinion that plaintiff's disability was caused by the accident of April 4, 1951, and that plaintiff's back condition was permanent.

Dr. Alexander Lichtor, an orthopedist, of Kansas City, saw plaintiff in April 1952, and twice in October 1954. X-rays taken showed the narrowing of the space between the fifth lumbar and the sacrum, and a small spur on the anterior portion of the lower edge of the fifth lumbar, which was the result of "ligamentous tearing." X-rays taken in October 1954 showed generally the

same conditions as the X-rays of April 1952. On his examination in 1952, there was no appreciable atrophy of the left leg and thigh, but by October 1954 the left thigh was three-fourths of an inch less in diameter and the left calf was one-half inch less in diameter than the right. That atrophy was caused by the protruding disc pressing on a nerve. In 1952 plaintiff held his spine in a relatively tight and straight position with a slight bending to one side. In October 1954, plaintiff was definitely "bent over." There was no significant muscle spasm in 1952, but in 1954 there was definite muscle spasm on both sides of the midline of the back. The doctor was of the opinion that plaintiff was in pain on the October 1954 examination. He diagnosed plaintiff's back condition as a damaged disc which had resulted in a malalignment of the spine with the protruding disc impinging on nerves in the area and that the condition was a result of the April 4, 1951, accident; that the back condition was permanent; and that plaintiff was unable to perform general physical annd manual labor; and the doctor did not know of any job for which an employer would hire plaintiff. He expressed the opinion that plaintiff could not sit at a desk for any period of time and that he could not successfully flag a crossing or count barrels and, considering his education and mental level, there was no work in which he could successfully engage.

Plaintiff's wife testified that plaintiff wore the back brace most of the time, including nights, because of pain, and that, although plaintiff attempted to help around the house, he was unable to do so.

Plaintiff's fellow employees and a former employer testified to a change in plaintiff's appearance, speech, and walk since the accident; one describing his walk as "very stooped over there with kind of a lurch, kind of unbalanced"; another said his speech is such that one cannot "understand him now"; another, that "he doesn't talk plain"; and one expressed plaintiff's appearance as one who looked as though he had aged ten or fifteen years since April 1951.

Defendant has cited these cases in support of its position that the judgment is excessive: Hayes v. Wabash R. Co., 360 Mo. 1223, 233 S.W.2d 12; O'Brien v. Louisville & N. R. Co., 360 Mo. 229, 227 S.W.2d 690; Votrain v. Illinois Terminal R. Co., Mo., 268 S.W.2d 838; Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42; Hilton v. Thompson, 360 Mo. 177, 227 S.W. 2d 675. Plaintiff has cited these cases in support of his position that the judgment is not excessive: Sanders v. Illinois Cent. R. Co., 364 Mo. 1010, 270 S.W.2d 731; Adams v. Atchison, T. & S. F. R. Co., 280 S.W.2d 84; Cruce v. Gulf, Mobile & O. R. Co., 361 Mo. 1138, 238 S.W.2d 674; Blew v. Atchison, T. & S. F. Ry. Co., Mo., 245 S.W.2d 31. We have examined all of the foregoing cases as well as others.

We agree that all of the foregoing cases are helpful and that the cases of Hayes v. Wabash R. Co., 1950, supra, and Dempsey v. Thompson, 1952, supra, wherein the injuries were generally similar in type to those in the instant case, and wherein the expenses and earnings were generally the same, and wherein verdicts of $55,000 were reduced by the trial courts to $45,000 and by this court to $37,500, tend to support defendant's contention that the instant judgment is yet excessive. We note, however, that in the Dempsey case the medical testimony was such as to induce the conclusion that the injured party was not wholly and permanently incapacitated from engaging in a gainful future occupation; although in Hayes the disability at trial time was generally similar to that of plaintiff in the instant case.

In addition to the foregoing cases, however, we must consider the cases of Sanders v. Illinois Cent. R. Co., 1954, supra, Blew v. Atchison, T. & S. F. Ry. Co., 1951, supra, and Rucker v. Illinois Terminal R. Co., 1954, 364 Mo. 804, 268 S.W.2d 849, which tend to support plaintiff's contention that the instant judgment is not substantially excessive. In Sanders, plaintiff's age, wages, and formal education were generally like those of plaintiff in the instant case. His injuries, though not of the same type as present plaintiff's, were not as dis-

abling from the standpoint of future earning ability. In Sanders the verdict for $88,000 was reduced to $70,000 and by this court to $45,000.

In Blew, plaintiff's age and formal education were like those of instant plaintiff although Blew's prior earnings were more. Again the injuries were different, but the evidence showed that plaintiff there was not totally and permanently disabled. In Blew, the verdict of $60,000 was reduced by this court to $50,000.

In Rucker, wherein, so far as the opinion discloses, the injuries were of the same type as those of instant plaintiff, the trial court reduced a $75,000 verdict to $45,000 and this court refused to interfere with the $45,000 judgment.

▮ The trial court weighed the evidence in ruling the motion for new trial on the issue of excessiveness of judgment. The trial judge was in a position to observe and evaluate the effect of the injuries in so far as they manifested themselves in plaintiff's appearance, walk, and speech. The evidence was such that the trial court reasonably could find that the instant plaintiff was totally and permanently disabled from following any gainful occupation in the future. The evidence, considered most favorably to support the order of the trial court, justified damages of $50,000. But the trial court, in exercising its discretion, had to consider also the rule of reasonable uniformity of the amounts of judgments allowed to stand in similar adjudicated injury cases. Considering and giving effect to such priorly adjudicated cases, we conclude that we may not here so precisely determine the maximum amount for which a judgment in the instant case should stand as to hold that a judgment for $50,000, fixed by the trial court, is so far "out of line" as to violate the uniformity rule.

Consequently, we are constrained to hold that the trial court did not abuse its discretion in limiting the remittitur in the instant case to $26,000.

It follows that the judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.